# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sheila S. Lang, | Civ. No. 08-5880 (DWF/JJK) |
| Plaintiff, | |
| v. | **REPORT AND** |
| Michael J. Astrue, | **RECOMMENDATION** |
| Commissioner of Social Security, | |
| Defendant. | |

Neut L. Strandemo, Esq., Strandemo, Sheridan & Dulas, counsel for Plaintiff.

Lonnie F. Bryan, Esq., Assistant United States Attorney, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sheila Lang seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner"), who denied Plaintiff's request for waiver of overpayment recovery of disability insurance benefits. This matter is before this Court for a Report and Recommendation to the District Court on the parties' cross-motions for summary judgment. *See* 28 U.S.C. § 636; D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Plaintiff's Motion for Summary Judgment (Doc. No. 14), be granted, and Defendant's Motion for Summary Judgment (Doc. No. 17), be denied.

# BACKGROUND

## I.     Procedural History

This is Plaintiff's second case in this Court challenging the Commissioner's rejection of her request for a waiver of overpayment recovery.  In the first case, the parties jointly agreed to reversal and remand to the Social Security Agency ("SSA" or "the agency") for further proceedings.  (*See* Tr. 174, Oct. 17, 2007 Order of District Court Judge Michael J. Davis ("Oct. Order"); Tr. 177, Sept. 17, 2007 Report and Recommendation of Magistrate Judge Jeanne J. Graham ("Sept. R&R").)[1]  Magistrate Judge Jeanne J. Graham recommended granting the parties' joint motion for judgment, but noted the parties had not explained their reasons for agreeing to reversal.   (Sept. R&R 2.)  Magistrate Judge Graham commented on the merits of Plaintiff's motion for summary judgment, stating that the record suggested Lang relied in good faith on official representations by the SSA, and the record lacked any indication that Lang was at fault for the overpayment.  (*Id.* at 2-3.)  United States District Judge Michael J. Davis issued an order adopting Magistrate Judge Graham's report and recommendation, and remanding the case for further proceedings before the SSA.  (Oct. Order.)

---

[1]     Throughout this Report and Recommendation, reference to the Administrative Record (Doc. No. 12), for this case is made by using the abbreviation "Tr." and reference to the Supplemental Administrative Record (Doc. No. 13), is made by using the abbreviation "Supp. Tr."

On November 30, 2007, following Judge Davis's remand Order, the Social Security Appeals Council issued a remand order of its own. (Tr. 167-70.) In its order, the Appeals Council stated that it had sought remand from the U.S. District Court for further consideration of the facts in Plaintiff's case because the ALJ's findings with respect to fault were inconsistent, and the ALJ did not consider, in her evaluation of fault, evidence of a letter written by the claimant. (Tr. 168-69.) The Appeals Council also instructed the ALJ to consider Magistrate Judge Graham's comments on the merits of the case, such as Judge Graham's concern that the evidence suggested the claimant acted in good faith, reasonably relied on SSA official representations, and the record lacked any indication the claimant was at fault. (Tr. 169.) The Appeals Council instructed the ALJ "to give [Plaintiff] the opportunity to provide the dates of contact with the [SSA], the phone numbers she called, and the names of offices and employees who provided the alleged misinformation." (Tr. 170.) Further, if Plaintiff provided sufficient information regarding the alleged misinformation, the ALJ would "contact the sources of [Plaintiff's] allegations, contact the sources for a response to [Plaintiff's] allegations, proffer any response to [Plaintiff], and give [Plaintiff] the opportunity to respond." (Tr. 170.) Plaintiff would also have the opportunity to offer complete information and supporting evidence relevant to whether the recovery of the overpayment would defeat the purpose of Title II of the Social

Security Act under 20 C.F.R. § 404.508.[2]  (Tr. 170.)  Plaintiff could also "argue that recovery of the overpayment is against equity and good conscience as defined in 20 C.F.R. § 404.509," and if Plaintiff was without fault, that recovery of the overpayment should be deemed to be against equity and good conscience under 20 C.F.R. § 404.512.  (Tr. 170.)  Plaintiff would have the opportunity for a hearing, and the ALJ would take any other action necessary to complete the administrative record and issue a new decision.  (Tr. 170.)

On August 21, 2008, following a second hearing, the ALJ issued a decision rejecting Plaintiff's request for waiver of overpayment recovery.  (Tr. 158-66.)  There is no evidence in the record that Plaintiff filed exceptions to the ALJ's decision, and the Appeals Council did not otherwise assume jurisdiction; therefore, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.984(d) (describing Appeals Council review of an ALJ decision in a case remanded by a Federal court).  On October 31, 2008, Plaintiff filed the instant action seeking judicial review pursuant to 42 U.S.C. § 405(g).  The parties thereafter filed cross-motions for summary judgment.

---

[2]    Title 20 of the Code of Federal Regulations, section 404.508(b), provides that recovery of an overpayment defeats the purpose of Title II in situations where "the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."

## II. The Record

Plaintiff applied for disability insurance benefits on April 10, 2002, alleging a disability onset date of September 27, 2001. (Tr. 35-37.) On July 15, 2002, the SSA notified Plaintiff in writing that it had awarded benefits to her. (Supp. Tr. 15.) On November 26, 2003, Plaintiff completed a "Work Activity Report," in which she indicated that on July 1, 2002, she returned to work as a flight attendant for Northwest Airlines. (Supp. Tr. 19-25.) Plaintiff reported working an average of sixteen flight hours per week, and was paid $46.51 hourly for flight hours, which was later raised to $47.67 per flight hour. (Supp. Tr. 20.) Plaintiff explained, "pay was partial earnings for the year 2002 from 7/1/02 - 1/1/03 when I returned to work." (Supp. Tr. 19.) She also indicated that she received long term disability payments of $200.00 from Northwest Airlines in May and June of 2002. (Supp. Tr. 22.)

On April 23, 2004, the SSA sent Plaintiff a letter notifying her that although she was found to be disabled beginning September 27, 2001, it planned to change its disability decision because Plaintiff returned to substantial gainful activity in July 2002. (Tr. 45.) Based on Plaintiff's Work Activity Report, the SSA concluded that Plaintiff made more than $780.00 a month beginning in July 2002; therefore, she was not disabled long enough to qualify for disability benefits. (Tr. 46.)

On May 7, 2004, Plaintiff responded in writing to the notification from the SSA. (Tr. 49.) She explained that she was forced to take leave from work in September 2001 due to a recurrence of breast cancer. (Tr. 49.) She had applied for long-term disability benefits, and her employer's insurance carrier told her to complete a social security disability application form, and obtain a receipt showing she had applied. (Tr. 49.) Further, Plaintiff wrote that on or about July 20, 2002, she received a letter from the SSA's Baltimore Office informing her that she was entitled to disability benefits beginning in March 2002, and her first payment would arrive shortly thereafter. (Tr. 49.) In her letter, Plaintiff went on to explain that she called the SSA on July 30, 2002, to inform them that she had returned to work in July 1, 2002. She wrote that an SSA "representative informed [her] that [she] would be qualified to receive disability benefits for at least an additional 9 months upon returning to work and that [she] should accept the checks since [she] apparently deserved them." (Tr. 50.) She wrote that she contacted SSA "several times" after July 30, 2002, and completed disclosure forms about her work and income that were mailed to her. (Tr. 50.) She explained that "[o]n February 16, 2004, [she] notified, by certified letter, [the SSA's] St. Paul and Baltimore offices that [she] had returned to work[.]" (Tr. 50.) She concluded her letter by explaining that a brochure she received from the SSA led her to believe that "[she] should have received benefits from March 1, 2002 to July 1, 2003, which date would be one year after [she] returned to work at Northwest Airlines." (Tr. 50.)

On June 2, 2004, the SSA sent Plaintiff a final notice of reversal of its decision awarding disability benefits to her. (Tr. 51.) The notice indicated that Plaintiff would receive a separate letter about any overpayment. (Tr. 52.) The overpayment was in the amount of $35,538.00. (*See* Tr. 34, 85, 87.)

On September 16, 2004, Plaintiff completed a "Request for Waiver of Overpayment Recovery" (Tr. 55-62), on which Plaintiff stated that during subsequent contacts with the SSA, "[e]ach person [with whom she spoke] said [she] was entitled [to receive the checks she was getting]." (Tr. 56.)

At the first hearing before an Administrative Law Judge, Plaintiff and her husband testified about Plaintiff's phone contacts with the SSA. (Tr. 146-47, 149-52.) In a decision dated June 7, 2006, the ALJ denied Plaintiff's request for a waiver of overpayment recovery. (Tr. 29-34.)[3] The ALJ determined that Plaintiff appeared to be "a responsible and thoroughly trustworthy individual" and observed that there was no indication of fraud or deceit in the record. (Tr. 33.) However, from the Plaintiff's testimony the ALJ inferred that her alleged repeated contacts with the SSA after she went back to work to determine if she should be receiving benefits was "inconsistent with the notion that she did not know or could not be expected to know the payments were in error." (Tr. 33.)

---

[3]     The final administrative denial of Plaintiff's request by the SSA led to Plaintiff's first challenge to the ALJ's ruling in this Court, as described above in Section I.

After the case was remanded and prior to the second hearing, Plaintiff submitted a number of documents to the ALJ. For instance, Plaintiff submitted the April 2, 2008 Affidavit of William F. Thuet. (Tr. 202-06, Aff. of William F. Thuet ("Thuet Aff.").) The affiant stated that he is a District Court Judge for the State of Minnesota, chambered in Hastings. (Thuet Aff. at 1.) He attested that Plaintiff's husband, Jeffrey Lang, had been his court reporter for twenty-five years. (*Id.*) He stated that he recalled Mr. Lang discussing Plaintiff's recurrence of breast cancer, her treatment, and ultimate return to work around the Fourth of July in 2002. (*Id.* at 2.) Judge Thuet also recalled Mr. Lang reporting that he and Plaintiff received a letter from the SSA after Plaintiff returned to work, stating that Plaintiff was disabled and would receive monthly disability benefits, including back pay. (*Id.*) Judge Thuet discussed this matter at length with Mr. Lang, and recommended to Mr. Lang that Plaintiff call the SSA and advise the agency that she had returned to work at Northwest Airlines. (*Id.* at 3.) Judge Thuet told Mr. Lang telling him several days later that Plaintiff had called the SSA. (*Id.*) Judge Thuet recalled Mr. Lang telling him someone at the SSA told Plaintiff that under the circumstances of her cancer treatment, she would be entitled to receive benefits for an additional nine months or more after she returned to work. (Tr. 205.) After Plaintiff's benefits were terminated, Judge Thuet further recalled Mr. Lang telling him that they had notified the SSA at least two times in writing that Plaintiff had returned to work in July 2002. (Tr. 205.) Judge Thuet offered his opinion that Plaintiff acted in good faith at all times and accepted the disability

8

payments based on representations of persons working for the SSA.  (Tr. 205-06.)

Before her second hearing, Plaintiff also submitted to the ALJ a document she called "Responses to Additional Information Request By Administrative Law Judge Diane Townsend-Anderson."  (Tr. 209-14.)  The first information request asked when and whom Plaintiff contacted at the SSA about her return to work.  (Tr. 209.)  Plaintiff (and/or her husband) explained that on August 13, 2002, Plaintiff "sent a[n] 'Application for Consideration of Benefits Through 9 months,'" to the SSA.  (Tr. 209.)  Plaintiff's response also indicated that she contacted the SSA on two more occasions between August 2002 and November 2003 and was again told that if she was continuing to receive checks she was entitled to keep the funds disbursed.  (Tr. 209.)  Plaintiff further stated that on November 26, 2003, she provided a work-activity report to the SSA about her return to work on July 1, 2002.  (Tr. 209.)   On January 21, 2004, Plaintiff received a notice that her benefits would be increased, and on February 16, 2004, she responded to this notice by sending a certified letter to the SSA that she had been back at work.  (Tr. 210.)

Plaintiff also provided the ALJ with a written explanation of why she felt the SSA's recovery of the overpayment would be against equity and good conscience, and why she believed she was without fault in causing the overpayment.  (Tr. 211.)  Plaintiff's response was:

- In the "Notice of Award" sent to us on July 15, 2002, it stated: "We found that you became disabled under our rules on September 27, 2001. However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is March 2002."

  After receiving this, why would we have questioned any benefits we received?

  It also stated: "If you go to work, special rules can allow us to continue your cash payments and health insurance coverage."

(Tr. 211.) Plaintiff also noted that in reliance on information that she was entitled to benefits, she and her husband continued to pay for their two children to be involved in sports, they continued to take family vacations, they bought a truck, did home renovations, and they saved for college for their children. (Tr. 211-13.) Plaintiff said that, without the SSA benefits, they would have had to cut these things from their budget. (Tr. 211.) Plaintiff also provided information about their cash on hand, the value of three vehicles they owned, their investments, and their changed financial conditions. (Tr. 215.)

On May 12, 2008, the ALJ conducted the second hearing following remand. (Tr. 546.) At this second hearing, Plaintiff testified as to her changed financial conditions. (Tr. 551.) The ALJ then asked Plaintiff what misinformation the SSA provided to her. (Tr. 552.) She testified that upon returning from a family vacation in July 2002, she had a huge deposit into her account from the SSA for benefits since March 2002. (Tr. 552.) Plaintiff testified that she immediately contacted the agency, and let them know she had returned to work

on July 1, 2002. (Tr. 552.) An SSA representative told her the SSA would notify the local social security office, which would decide if she was qualified to receive extended disability benefits for at least nine months. (Tr. 552.) Plaintiff testified that the SSA never told her how long the extension of benefits would be, but when her benefits increased in February 2004, she contacted the SSA to ask when the payments would stop. (Tr. 553.) Plaintiff could not remember the exact dates or the names of the people she talked to, but testified that on two separate occasions between August 2002 and November 2003, she called SSA to inform them that she was working, and she was told to accept the checks because she deserved it. (Tr. 553, 555.)

Plaintiff's husband then testified primarily about Plaintiff's family's financial situation. (Tr. 562-67.) He also testified that he questioned how long Plaintiff would receive extended benefits following Plaintiff's return to work, but when Plaintiff called the agency, she was told not to worry. (Tr. 569.) Plaintiff's husband testified that they were surprised when the benefits increased, and that is when they sent the letter by certified mail about the situation in February 2004. (Tr. 569-70.) Upon the ALJ's request, Plaintiff submitted additional financial information after the hearing. (Tr. 571, 219-545.)

## III. The ALJ's Second Decision

On August 21, 2008, the ALJ rejected Plaintiff's request for waiver of overpayment recovery. (Tr. 158-66.) Upon reviewing Plaintiff's testimony from

the hearing, the ALJ noted that Plaintiff acknowledged that not receiving social

security benefits would have altered her lifestyle drastically because she would

have had to remove her children from sports, not take family vacations, and not

make home improvements.  (Tr. 162.)  The ALJ also stated:

> [Plaintiff] could not remember the dates or names of the social
> security employees she allegedly talked to, even though from July
> 2002 through February 2004, she alleged that she called the agency
> twice.  The only documentation she could provide was a letter she
> sent in February 2004, in which she informed the agency that she
> had returned to work and had continued to receive checks beyond
> the 9 month period.  However, she testified that she sent the letter
> not to inform the agency that she was working, but to find out when
> the checks would stop because not receiving the checks would alter
> her lifestyle.

(Tr. 162.)

The ALJ noted Plaintiff had testified that "from July 2002 to February 2004,

she earned $42,000 a year."  (Tr. 162.)  Based on this testimony, the ALJ

determined that Plaintiff was less than forthright on a Work Activity Report

because she reported "partial earnings" as a flight attendant with a 16-hour work

week, and pay from July 2002 through April 2003 that "varied every month."

(Tr. 162-63.)  The ALJ found that this report by Plaintiff suggested "an intent to

trivialize" the work she had performed.  (Tr. 163.)

The ALJ rejected Plaintiff's explanation that she relied on a Notice of

Award form from the SSA, which advised there were rules allowing a person to

receive benefits after returning to work.  (Tr. 163.)  The ALJ reasoned that the

form directs the recipient to call for more information, and the claimant could not

show that she called, and could not "recall the dates or the names of the individuals she allegedly called." (Tr. 163.) The ALJ opined that while Plaintiff may have thought she could have been entitled to a nine-month trial-work period, she did not receive a written decision awarding a trial work period. (Tr. 163.)

Based on the findings that Plaintiff could not recall dates or names related to her contacts with the SSA and that any contact the Plaintiff made with the SSA was for the purpose of preserving the standard of living receipt of benefits afforded Plaintiff's family, the ALJ concluded that the record did not disclose a detrimental reliance on misinformation, "but a college graduate who was working, and kept accepting payments she knew or must have known were incorrect as it was convenient to keep-up a family lifestyle." (Tr. 163.) The ALJ concluded that even if it was assumed that Plaintiff notified the agency of her return to work, Plaintiff must have known it was incorrect to continue to accept benefits after she returned to work. (Tr. 163-64.) The ALJ stated that "[Plaintiff] and her husband are college educated individuals who cannot assume that the American taxpayer should subsidize their lifestyle while they are both working." (Tr. 164.)

For essentially the same reasons that the ALJ determined Plaintiff was not without fault in causing the overpayment, the ALJ found recovery of the overpayment would not be against equity and good conscience. (Tr. 165.) Finally, based on the claimant's income and assets, and the nature of Plaintiff's expenses for family vacations and sports for their children, the ALJ concluded

13

that recovery of the overpayment would not defeat the purposes of the Social Security Act.  (Tr. 164.)

## DISCUSSION

### I.    Standard of Review

Judicial review of the Commissioner's decision that Plaintiff was not entitled to waiver of overpayment recovery is limited to whether the decision is supported by substantial evidence on the record as a whole, and complies with the relevant legal requirements.  *See Gladden v. Callahan*, 139 F.3d 1219, 1222 (8th Cir. 1998) (noting that ALJ's findings in an overpayment-recovery case would be affirmed if supported by substantial evidence on the record as a whole); *accord Coulston v. Apfel*, 224 F.3d 897, 901 (8th Cir. 2000) (Bye, J., concurring) (noting substantial-evidence test applies in waiver-of-overpayment cases). "Substantial evidence is evidence that a reasonable mind would find adequate to support a decision, considering both evidence that detracts from and evidence that supports the Commissioner's decision."  *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 974 (8th Cir. 2009) (quoting *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)).  "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings."  *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

In reviewing the record for substantial evidence, the Court may not

substitute its own opinion for that of the ALJ.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion.  *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).  Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  *Gavin*, 811 F.2d at 1199.  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

"A court must defer to an ALJ's well-reasoned determinations of credibility if they are supported in the record by substantial evidence."  *Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007).  In a waiver-of-overpayment-recovery case, such as this one, if an ALJ chooses not to believe a claimant, "it is necessary . . . that the fact finder articulate 'any reasons for questioning [the claimant's] credibility[.]" *See Viehman v. Schweiker*, 679 F.2d 223, 228 (11th Cir. 1982) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

## II.    Legal Framework

In this case, this Court is not called upon to review the Commissioner's denial of benefits to an individual found not to be disabled.  Rather, as described

above, this case involves review of the Commissioner's decision that Plaintiff is

not entitled to waiver of the SSA's attempt to recover an overpayment of benefits.

It is helpful to address the legal framework for such recovery of an overpayment

by the SSA and the circumstances under which an individual may have such

recovery waived.

"Whenever the [Commissioner] finds that more or less than the correct

amount of payment has been made to any person under this subchapter, proper

adjustment or recovery shall be made[.]" 42 U.S.C. § 404(a)(1). However,

recovery of an overpaid sum is not to be made from a person who is "without

fault." *See* 42 U.S.C. § 404(b); *see also Gladden v. Callahan*, 139 F.3d 1219,

1222 (8th Cir. 1998) (citing statute). Section 404(b) provides:

> In any case in which more than the correct amount of payment has
> been made, there shall be no adjustment of payments to, or
> recovery by the United States from, any person who is without fault
> if such adjustment or recovery would defeat the purpose of this
> subchapter or would be against equity and good conscience.

42 U.S.C. § 404(b). A person who receives the overpayment from the SSA is at

fault if the incorrect payment to the individual resulted from the individual making

an incorrect statement which she knew or should have known to be incorrect,

failing to provide information which she knew or should have known to be

material, or accepting a payment which she either knew or should have known

was incorrect. *See* 20 C.F.R. § 404.507. "Whether the claimant is without fault

is a threshold determination. If the claimant is not without fault, the Secretary is

not required to proceed further to address the second requirement." *See*

*Greenberg v. Comm'r of Soc. Sec.*, No. 3:95CV593 (AWT), 1998 WL 229849, at *3 (D. Conn. Mar. 30, 1998) (citing *Heins v. Shalala,* 22 F.3d 157, 163 n. 2 (7th Cir.1994).

However, "someone who relies on erroneous information from an official source [within the SSA] meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, *and* recovery would be against equity and good conscience." *Gladden*, 139 F.3d at 1223 (citing 20 C.F.R. §§ 404.510a and 404.512(a)); *Audet v. Astrue*, No.4:08CV3220, 2009 WL 1664598, at *7 (D. Neb. June 11, 2009) (quoting *Gladden*, 139 F.3d at 1223).

## III.    Analysis of the ALJ's Decision

### A.    Whether Substantial Evidence Supports the ALJ's Decision that Plaintiff Was "Not Without Fault"

This Court first addresses whether the ALJ's decision that Plaintiff was not without fault in accepting the overpayment is supported by substantial evidence. The ALJ's first decision on Plaintiff's request for waiver of overpayment recovery was reversed and remanded in an earlier case in this District. The SSA Appeals Counsel, in its remand order, directed the ALJ to obtain additional evidence and conduct further proceedings in consideration of Magistrate Judge Graham's conclusion in the earlier case. (Tr. 167-70.) Magistrate Judge Graham comments on the merits of Plaintiff's first appeal indicated that the record suggested that Plaintiff relied in good faith on official representations by the SSA, and the record lacked any evidence that Plaintiff was at fault for the

17

overpayment. Ultimately, Magistrate Judge Graham observed that the ALJ's first decision "was not based on substantial evidence." (Tr. 179.) Therefore, without further development of facts in the record to support the conclusion that Plaintiff was not without fault, and that Plaintiff did not reasonably rely on official representations by the SSA to accept the overpayment, the ALJ could not reject Plaintiff's request for waiver of overpayment recovery upon remand.

Plaintiff raises several arguments relating to the ALJ's second decision that Plaintiff was not without fault. Plaintiff argues that the ALJ erred in changing her credibility ruling from the first to the second hearing, that the ALJ erred in assessing Plaintiff's purpose for contacting the SSA, and that the ALJ erred in finding Plaintiff's husband not credible. Plaintiff also argues that there was no evidence in the record suggesting that Plaintiff was to blame for the overpayment, so the ALJ's decision could not have been supported by substantial evidence. And Plaintiff argues that the ALJ erred in concluding that Plaintiff's only documentation of her contact with the SSA is a letter dated in February 2004.

The ALJ's negative credibility ruling regarding Plaintiff's contacts with the SSA by telephone is crucial to the ALJ's determination that Plaintiff was not without fault. It should be iterated here that the standard for this Court's review of the ALJ's credibility determination is deferential, *see Pirtle v. Astrue*, 479 F.3d at 933, but the ALJ's credibility determination is entitled to such deference only if it is well reasoned and supported by substantial evidence. For the reasons that

18

follow, this Court concludes that the ALJ's credibility determination is not well reasoned and is not supported by substantial evidence.

The ALJ provided the following reasons for rejecting Plaintiff's testimony: (1) Plaintiff recalled only one date that she contacted the SSA by phone, July 30, 2002, and she did not remember with whom she had spoken; (2) Plaintiff did not recall any other specific dates or names regarding her other two telephone calls to the agency, only that the calls occurred between August 2002 and November 2003; and (3) had Plaintiff called the SSA, the agency would have stopped payments and reopened the decision that Plaintiff was entitled to benefits. The ALJ also apparently discredited Plaintiff's testimony because the ALJ determined that Plaintiff's apparent purpose for contacting the agency was based on a concern that she would have to alter her lifestyle.

While Plaintiff's inability to recall the names and dates of her telephone contacts with the SSA may detract from the weight of her testimony, the record is completely devoid of evidence contradicting Plaintiff's statements that she contacted the SSA by telephone on several occasions. The ALJ points to no evidence in the record that contradicts this testimony. Plaintiff's failure of memory with respect to the specifics of these calls is not evidence contrary to her testimony, but rather a lack of evidence supporting her testimony. *See Copeland v. Bowen*, No. J-C-85-40, 1986 WL 83449, at *3 (E.D.Ark. November 28, 1986) (noting a lack of evidence is not "more substantial evidence" than the testimony of two individuals); *Chitwood v. Chater*, 928 F. Supp. 874 (the lack of a "Report

19

of Contact" in Plaintiff's file is not determinative of whether he called the SSA to inform the agency he was working). This Court finds that the ALJ placed undue weight on Plaintiff's inability to recall the names and dates related to her contacts with the SSA. In fact, the record is not barren with respect to evidence supporting Plaintiff's assertion that she made the phone calls as she testified.

First, Plaintiff's husband's testimony corroborated Plaintiff's own testimony about her telephone contacts with the SSA. Second, Plaintiff's testimony about her July 30, 2002 contact with the agency is supported by a note Plaintiff wrote on the Notice of Award she had received.[4] On the Notice of Award, Plaintiff wrote that the SSA told her she might be entitled to benefits for a nine-month (or longer) trial-work period, and she would be sent a form to complete. (Supp. Tr. 15.) Plaintiff testified that she completed that form and returned it to the SSA. And the Affidavit of William F. Thuet supports Plaintiff's and her husband's testimony about contacting the agency and relying on official representations that accepting the benefit payments was appropriate. The ALJ did not discuss the Thuet affidavit in her decision, but it was marked received April 7, 2008, which was well before the ALJ's issued the second decision in August 2008. (Tr. 202-06.) Thus, substantial evidence in the record contradicts the ALJ's adverse credibility determination regarding Plaintiff's testimony of telephone contacts with

---

[4]     This handwritten note is Plaintiff's documentation of her contact with the SSA. Therefore, the ALJ's finding that Plaintiff's only documentation of her contact with the SSA was a letter dated in February 2004 is incorrect.

the SSA, and, further, substantial evidence supports the Plaintiff's contention that she accepted the checks based on official representations of the SSA with respect to the rules for continued receipt of benefits following a return to work. *See* 20 C.F.R. § 404.510a (noting that a claimant who so relies on misinformation regarding an interpretation of the Social Security Act or the SSA's regulations will be deemed without fault); *see also* 20 C.F.R. § 404.1590(b)(4) (noting that the SSA will conduct a "continuing disability review" when a claimant returns to work and completes a "period of trial work").

Nor do the ALJ's other reasons for reaching an adverse credibility ruling regarding Plaintiff's contacts with the SSA convince this Court that the ALJ's decision is supported by substantial evidence. The ALJ's conclusion that had Plaintiff contacted the SSA to report her return to work as she testified, the payments Plaintiff received would have ceased and her hearing on eligibility for benefits would have been reopened is not supported by any evidence in the record. This conclusion merely reflects an assumption that the SSA could not have committed the error involved in this case without some fault of the Plaintiff. Such an assumption plainly lacks the support of substantial evidence. The ALJ added to this discussion that even assuming Plaintiff contacted the SSA and received the misinformation alleged "claimant is a college graduate and should have known that her work activity since July 2002 precluded receipt of the checks." (Tr. 163.) The observation that Plaintiff has a college education is relevant to the inquiry whether Plaintiff is without fault, *see* 20 C.F.R. § 404.507,

but the ALJ's decision does not explain how Plaintiff's background and education familiarizes her with how the SSA's rules are applied in special circumstances. This alternative finding by the ALJ also largely ignores the evidence concerning a trial-work period. The ALJ's only comment about Plaintiff's contention that she relied on official representations that she could accept benefits while working under a trial-work period, was that Plaintiff never received a written decision on a trial work period. However, an official representation need not be documented in writing for a claimant to reasonably rely on that representation in accepting an overpayment. *See Viehman*, 679 F.2d at 228 (noting that where only evidence of misinformation by an official representative of the SSA was claimant's testimony, claimant was entitled to waiver if his testimony was credible); *accord Morris v. Shalala,* Civ. A. No. 92-1508, 1994 WL 3401, at *8-10 (E.D. Pa. Jan. 4, 1994). Rejection of the Plaintiff's testimony on this ground is not well supported.

There is no support in the record for the ALJ's adverse credibility finding based on Plaintiff's testimony that she wrote to the SSA in February 2004 to find out when the benefit checks would stop coming because it would alter her lifestyle. The ALJ inferred from this testimony that Plaintiff did not honestly report her work activity, but Plaintiff's February 2004 letter to the SSA stated, "[t]his letter is to inform you that I am currently back to work and should no longer be receiving benefits." (Supp. Tr. 28.) No negative inference about Plaintiff's intention to inform the agency that she was receiving money she was not entitled to can be drawn from Plaintiff's February 2004 contact with the SSA.

This Court is left with the clear impression that the records lacks any evidence that Plaintiff was defrauding the agency or acting in anything other than good faith.  In the face of this lack of evidence, the sworn testimony of Plaintiff, her husband, and the Thuet Affidavit, the ALJ erred in ruling that Plaintiff was not without fault.  The ALJ's decision on that issue, although presented as a ruling based on adverse credibility findings, to which this Court must normally defer, lacks adequate support in the record.  Because the ALJ's determination that Plaintiff was to blame for the overpayment was not supported by substantial evidence, and substantial evidence in the record supports Plaintiff's contention that she accepted the overpayment because of reliance on erroneous information from an official source within the SSA concerning the application of rules related to receipt of benefits on return to work, this Court concludes that Plaintiff was without fault within the meaning of 20 C.F.R. § 404.506(a).

**B.      Whether Recovery of the Overpayment Would Defeat the Purpose of Title II of the Social Security Act or Would Be Against Equity and Good Conscience.**

Plaintiff does not specifically challenge the ALJ's determination that recovery of the overpayment in this case would not defeat the purpose of Title II of the Social Security Act, and thus, having concluded that Plaintiff is without fault, this Court now addresses whether the Commissioner's recovery of the overpayment would be against equity and good conscience.   The ALJ concluded that recovery would not be against equity and good conscience

because Plaintiff "has not provided credible evidence that she changed her position for the worse based on her reliance upon a payment or because of the overpayment itself [and] provided no credible evidence . . . that the agency provided her with incorrect information." (Tr. 165.)  Further, the ALJ concluded that "the expenses (vacation trips, and vacations, and the exorbitant expenses for sports activities for her children) disclose that [Plaintiff] tried to use government funds destined for disabled individuals to keep-up a lifestyle of vacations, and trips, while she and her husband continued to work." (Tr. 165.)

Plaintiff argues that reliance on erroneous information from an official source within the SSA dictates that a person is both without fault and that recovery would be against equity and good conscience. (Doc. No. 15, Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 15-16.)  Plaintiff bases this argument on 20 C.F.R. § 404.510a, and on *Gladden*.

In relevant part, 20 C.F.R. § 404.509 directs that recovery of an overpayment is against equity and good conscience when an individual changes her position for the worse or relinquished a valuable right because of reliance on the overpayment.  20 C.F.R § 404.509(a)(1).  But these are not the only circumstances in which recovery of an overpayment is against equity and good conscience.  *See Groseclose v. Bowen*, 809 F.2d 502, 505-06 (8th Cir. 1987) (determining that the SSA's interpretation of "against equity and good conscience" to include only situations involving a claimant's change of position for the worse or relinquishment of a valuable right is "unreasonably narrow").  For

24

instance, in *Gladden*, the Eighth Circuit explained that in a situation where a person is deemed to be without fault under the terms of 20 C.F.R. § 404.510a,[5] another regulation, 20 C.F.R. § 404.512(a), directs that "adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience." 139 F.3d at 1223 (internal quotations and emphasis removed). "Thus, someone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, *and* recovery would be against equity and good conscience." *Id.*

As mentioned above, the ALJ based the decision that recovery would not be against equity and good conscience on the determination that Plaintiff did not present credible evidence that she received misinformation from official sources within the SSA. However, this Court has concluded that the ALJ's decision on that issue was not supported by substantial evidence, and that substantial evidence supports Plaintiff's assertion that she was provided with misinformation when she contacted the SSA.

---

[5]    Section 404.510a further provides that

Where an individual . . . accepts such overpayment because of reliance on erroneous information from an official [SSA] source . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto . . . such individual . . . will be deemed to be without fault.

20 C.F.R. § 404.510a.

The ALJ's conclusion that Plaintiff "knew or should have known that these benefits were not due based on her work activity" is not supported by substantial evidence for the same reason; the ALJ based this conclusion on the erroneous finding that Plaintiff failed to contact the agency. (*See* Tr. 165 (determining that Plaintiff knew or should have known she was receiving payments in error because Plaintiff could not identify the individuals who or the dates when she was provided with the alleged misinformation).) Moreover, there is no evidence in the record to support the ALJ's implicit conclusion that Plaintiff was trying to defraud or deceive the SSA. No new evidence was presented after the first hearing or prior to the second to justify the ALJ's about-face with respect to Plaintiff's apparent good faith. (*Compare* Tr. 33 ("There is no hint or suggestion that fraud or deceit are involved in this matter."), *and* Sept. R&R 2-3 ("The record suggests that [Plaintiff] relied in good faith on [official] communications here [and] lacks any indication that she was at fault."), *with* Tr. 165 (suggesting that Plaintiff tried to deceive the SSA in order to increase her family's income).) The ALJ appears to have reached this conclusion because Plaintiff's financial circumstances during the time she received the overpayment were such that she and her family were able to maintain a certain standard of living. Such considerations about a claimant's financial circumstances are relevant to a consideration of whether recovery would defeat the purpose of Title II under 20 C.F.R. § 404.508, but the plain language of 20 C.F.R. § 404.509(b) instructs that "[Plaintiff's] financial circumstances are not material to a finding of against equity

and good conscience." Thus, the ALJ erred to the extent she determined that Plaintiff's financial circumstances meant that waiver would not be against equity and good conscience.

Because this Court has determined that substantial evidence in the record demonstrates that Plaintiff relied on erroneous information from an official source within the SSA regarding the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, this Court concludes that Plaintiff meets both requirements for waiver set forth in 42 U.S.C. § 404(b). She is without fault in causing the overpayment, and recovery would be against equity and good conscience. *See Gladden*, 139 F.3d at 1223.

## C. Conclusion

In conclusion, substantial evidence in the record, including Plaintiff's and her husband's testimony, Plaintiff's documentation of her phone call to the SSA on July 30, 2002, and the Affidavit of William F. Thuet, is contrary to the ALJ's credibility analysis and decision to reject Plaintiff's request for waiver of overpayment recovery. S*ee Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (stating a claimant's testimony "must be considered seriously" without being "entirely discounted because of weak (or no) objective findings.") (additional citations omitted). The evidence in the record has been fully developed; therefore, it is appropriate to reverse the ALJ's decision and direct the Commissioner to waive recovery of Plaintiff's overpayment. *See Mitchell v.*

*Barnhart*, No.2:01CV00081DJS/MLM, 2003 WL 23413625, at *10-11 (E.D. Mo. Dec. 18, 2003) (reversing without remanding where evidence unequivocally established right to waiver of overpayment recovery).

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     Plaintiff's Motion for Summary Judgment (Doc. No. 14), be **GRANTED**;

2.     Defendant's Motion for Summary Judgment (Doc. No. 17), be **DENIED**;

3.     The decision of the Commissioner be **REVERSED AND          THE COMMISSIONER BE DIRECTED TO WAIVE RECOVERY OF OVERPAYMENT**; and

4.     This case be **DISMISSED WITH PREJUDICE**.


Date: August 20, 2009

_s/ Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 3, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the

objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.